FILED

OCT 1 3 2020

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO.
CAPE GIRARDEAU

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No. 1:20CR00164SNLJ |
| DONNA GILL, ) | |
| Defendant. ) | |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are defendant **Donna Gill** ("the Defendant"), represented by defense counsel **Edward Dowd and Michelle Nasser**, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the Defendant's waiver of indictment and voluntary plea of guilty to Counts 1 and 2 of the information, the United States agrees that no further federal criminal prosecutions will be brought in this District relative to the Defendant's (a) solicitation and receipt of illegal kickbacks for referring patients to durable medical equipment ("DME") companies, medical testing laboratories, and pharmacies for DME, genetic testing, and prescription medications (collectively

referred to as "Health Care Services") and (b) the creation, use, and submission of false documents related to health care matters, including patient records and reimbursement claims for Health Care Services, from 2017 to December 31, 2019, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court, pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The Government reserves the right to oppose such a request. The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

**3. ELEMENTS:**

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 371, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, two or more persons reached an agreement or came to an understanding to defraud the United States or to commit offenses against the United States;

*Two*, the defendant voluntarily and intentionally joined in the agreement or understanding either at the time it was first reached or at some time while it was still in effect;

2

*Three,* at the time the defendant joined the agreement or understanding, she knew the purpose of the agreement or understanding; and

*Four,* while the agreement or understanding was in effect, a person or persons who had joined the agreement or understanding knowingly did one or more overt acts for the purpose of carrying out or carrying forward the agreement or understanding.

As to Count 2, the defendant admits to knowingly violating Title 18, United States Code, Section 1347, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant knowingly executed or attempted to execute a scheme to defraud a health care benefit program:

*Two*, the defendant did so with the intent to defraud;

*Three*, the defendant did so in connection with the payment for health care benefits or services;

*Four,* the Medicaid and Medicare Programs are public plans, affecting commerce in some way or degree, under which health care benefits or services are to be provided to individuals.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

a.   The Defendant has been a nurse practitioner since 1981 and at relevant times, as outlined in the information, was licensed in Colorado, Connecticut, Florida, Illinois, Minnesota, Oklahoma, South Carolina, and Tennessee. In addition to her master's degree in nursing, the

3

Defendant graduated in 2008 with a doctorate in forensics. In 2017, the Defendant owned and operated Comprehensive Forensic Consulting and was associated with FixUrRX, a Colorado company owned by Co-conspirator 1. From about 2013 to about 2017, the Defendant was employed by H2U Wellness Center as a nurse practitioner. Prior to 2013, the Defendant was a professor at the University of South Carolina.

  b. From in or about 2017 to in or about 2019, the Defendant contracted and worked as a telemedicine provider for several companies, including but not limited to: Locum Tenens USA, Inc., Encore Telemedicine, LLC, Royal Physician Network, and Envision It Perfect, Georgia companies; MedSymphony, LLC, a South Carolina company; Advantage Choice Care, a New Jersey company; AIM Healthcare, LLC, a Maryland company; and Lifeline Recruiting, a Florida company.

  c. As a telemedicine provider with these companies, and during the time outlined in the information, the Defendant electronically received a document, containing information about a patient and the durable medical equipment or other services the Defendant was to order for the patient. The Defendant admits that she had no prior relationship with any of these patients and in almost all instances, she did not speak to the patients or in any other way attempt to evaluate and determine the patients' medical needs.

  d. The Defendant admits that, during the time period outlined in the information, she conspired with individuals affiliated with the above named companies and other individuals, in violation of Title 18 United States Code, Section 371:

    (i) to solicit and receive illegal kickbacks for referrals and orders for durable medical equipment, cancer screenings, and certain prescription medications, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(B);
    (ii) to create and use false and fraudulent documents, including patient assessment

    and evaluation records and reimbursement claims, in violation of Title 18, United States Code, Section 1035; and

(iii) to execute a scheme to defraud health care benefit programs, including the Medicare and Medicaid Programs, by submitting and causing the submission of false and fraudulent reimbursement claims for the above listed items and services, in violation of Title 18, United States Code, Section 1347.

  e. The Defendant admits that the Medicare and Medicaid Programs are federal health care programs, which will only reimburse enrolled providers for services that have been determined to be medically necessary by a doctor or other qualified provider.

  f. The Defendant admits that, as a nurse practitioner and a Medicare provider from 1996 to present, she knew that it was illegal to solicit or receive remuneration of any kind in return for ordering, arranging for, or recommending goods or services for which payment may be made, in whole or in part, by a federal health care program. The Defendant further admits she knew that Medicare and Medicaid would not pay providers for items or services obtained as a result of illegal kickbacks.

  g. The Defendant admits that during the time period outlined in the information, she received illegal kickbacks for signing, authorizing, and ordering Health Care Services, when she knew the patients did not need and had not requested the items and services. The Defendant admits that the companies, from whom she received illegal kickbacks, typically paid her $30 for each order. The payments to the Defendant by each company are reflected in the chart below:

| Company | Amount Paid | Dates |
|---|---|---|
| Locum Tenens/Encore Telemedicine | $245,715 | 2017 - 2019 |
| MedSymphony | $62,380 | 2017 - 2018 |
| Advantage Choice Care | $207,150 | 2017 - 2018 |
|  | $3,660 |  |
| AIM Healthcare | $52,740 | 2018 - 2019 |
| Lifeline Recruiting | $62,099 | 2018 - 2019 |
| Royal Physician Network | $1,530 | 2019 |
| Envision It Perfect | $45,840 | 2018 - 2019 |

5

h. The Defendant admits that almost all the patients for whom she ordered Health Care Services were identified through mass telemarketing and cold calls. The Defendant admits she did not have a prior physician-patient relationship and did not otherwise know the patients, who often lived in states far distant from the Defendant's residence or practice.

i. The Defendant admits she knew that the telemarketers and others (some from outside the United States), who purportedly did intake of the patients by phone or video-conference were not medical professionals or qualified to determine the patients' medical need for Health Care Services. The Defendant also knew some of the intake workers pressured patients to exaggerate the length of time and the level of pain they had experienced.

j. The Defendant admits that she received numerous complaints from patients, who asked why they had been contacted about braces and why they had received braces, which they did not need and had not requested. On some occasions, the Defendant advised the patients to donate the braces to charitable organizations.

k. The Defendant also admits that during the summer of 2017, she, in concert with Co-conspirator 1, ordered cancer screenings for patients who were approached and swabbed at a kiosk in a Colorado mall. The Defendant admits that she never had a physician relationship with these patients and did not make a determination that cancer screening was necessary for them.

l. The Defendant further admits that on or about August 10, 2018, she ordered multiple braces (2 knee, 2 wrists and 2 additional lower extremity braces) for Patient L.O., which was in furtherance of the conspiracy and an execution of the health care fraud scheme. The order was sent to Integrity Medical Supply (a company in Cape Girardeau, Missouri), which filled the

order.

  m.  The parties further stipulate that a loss of $23,880,678 is attributable to the Defendant as a result of her participation in the conspiracy and health care fraud scheme described above.

## 5. STATUTORY PENALTIES:

The Defendant fully understands that the maximum possible penalty provided by law for the crime of conspiracy, as charged in Count 1, to which the Defendant is pleading guilty is imprisonment of not more than 5 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

The Defendant fully understands that the maximum possible penalty provided by law for the crime of executing a health care fraud, as charged in Count 2, to which the Defendant is pleading guilty is imprisonment of not more than 10 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

## 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

a. **Chapter 2 Offense Conduct:**

(1) **Base Offense Level:** The parties agree that the base offense level for Counts 1 and 2 is **6,** as found in Section 2B1.1(a)(2).

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: The offense level should be increased by **20** levels, pursuant to Section 2B1.1(b)(1)(K), because the loss exceeded $9.5 million and did not exceed $25 million. The offense level should be increased by an additional **4** levels, pursuant to Section 2B1.1(b)(7), because the offense involves a loss of over $20 million to a Government health care program.

b. **Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the Defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the Defendant's intention to plead guilty. The parties agree that the Defendant's eligibility for this deduction is based upon information presently known. If, subsequent to the taking of the guilty plea, the Government receives new evidence of statements or conduct by the Defendant which it believes are inconsistent with Defendant's eligibility for this deduction, the Government may present said evidence to the Court, and argue that the Defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2) **Other Adjustments:** The parties agree that the following additional adjustments apply: The offense level should be increased by an additional **2** levels, pursuant to Section 3B1.3 because the Defendant abused a position of private or public trust.

8

c. **Other Adjustment(s)/Disputed Adjustments**: None

d. **Estimated Total Offense Level**: The parties estimate that the Total Offense Level is 29.

e. **Criminal History**: The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the findings of the Presentence Report as to the Defendant's criminal history and the applicable category. The Defendant's criminal history is known to the Defendant and is substantially available in the Pretrial Services Report.

f. **Effect of Parties' U.S. Sentencing Guidelines Analysis**: The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**:

a. **Appeal**: The Defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1) **Non-Sentencing Issues**: The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which Defendant is pleading guilty and whether the Defendant's conduct falls within the scope of the statute(s).

9

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and the agreed Total Offense Level and sentences the Defendant within or above that range.

**b. Habeas Corpus:** The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the Defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on the Defendant to which the Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The Defendant understands that parole has been abolished

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the Defendant agrees to pay at the time of sentencing. Money paid by the Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A,

11

an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The Defendant agrees to provide full restitution to all victims of all charges in the Information.

g. **Forfeiture:** The defendant agrees to the forfeiture set forth in the Forfeiture Allegation in the information to which the Defendant is pleading guilty. This agreement includes any items that were seized by law enforcement officials during the course of this investigation. The Defendant also agrees to the entry of a forfeiture money judgment in the amount of restitution determined by the court at sentencing. The Defendant further agrees that the proffer of evidence supporting this guilty plea is sufficient evidence to support such forfeiture.

The Defendant agrees that the Court may enter a consent preliminary order of forfeiture at the time of her guilty plea or at any time before sentencing. The Defendant further agrees that this order will become final as to the Defendant when it is issued and will be part of her sentence pursuant to Fed. R. Crim. P. 32.2(b)(4)(A).

The Defendant agrees that the Government may choose in its sole discretion how it wishes to accomplish forfeiture, whether by criminal or civil forfeiture, using judicial or non-judicial forfeiture processes. The Defendant waives all rights to assert any interest in the forfeited property in the future, and will withdraw any prior claims made to forfeited property, whether they were made in a judicial or non-judicial forfeiture process.

The Defendant agrees (i) to assist the Government in identifying all property that is subject to forfeiture, (ii) to take any and all actions necessary to transfer title and ownership of

said property to the Government, and (iii) to help the Government to rebut the claims of nominees and/or alleged third party owners, including by testifying truthfully in any judicial forfeiture proceeding.

The Defendant knowingly and intelligently waives all constitutional and statutory challenges in any manner to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant further knowingly and intelligently waives any rights the Defendant may have (i) for notice of the forfeiture to be given in the charging instrument, (ii) for a jury or the Court to determine what property is subject to forfeiture, (iii) for the Court to explain the forfeiture at the Defendant's change of plea hearing, and (iv) for the forfeiture to be made part of the oral pronouncement of sentence and included in the judgment.

h. **Admissions**: Except under circumstances where the Court, acting on its own, fails to accept this plea agreement, the Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement.

9. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the Defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be

tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The Defendant further understands that by this guilty plea, the Defendant expressly waives all the rights set forth in this paragraph.

The Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The Defendant's counsel has explained these rights and the consequences of the waiver of these rights. The Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The Defendant is fully satisfied with the representation received from defense counsel. The Defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the Defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact Defendant's immigration status or result in deportation. In particular, if any crime to which Defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed

14

mandatory. Defense counsel has advised the Defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the Defendant states that no person has, directly or indirectly, threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The Defendant further acknowledges that this guilty plea is made of the Defendant's own free will and that the Defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if the Defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

| | |
|---|---|
| 4/11/20<br>Date | *Dorothy L. McMurtry*<br>DOROTHY L. McMURTRY<br>Assistant United States Attorney |
| 4/11/2020<br>Date | *Donna Gill*<br>DONNA GILL<br>Defendant |
| 04/11/2020<br>Date | *Michelle Nasser*<br>MICHELLE NASSER<br>EDWARD DOWD<br>Attorneys for Defendant |

16